ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| EL PUEBLO DE PUERTO RICO<br>Peticionario<br><br>v.<br><br>GILBERTO ORTIZ COLÓN<br>Recurrido | KLCE202300982 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Caso Número:<br>B LE2022G0237<br><br>Sobre:<br>Ley 54 |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores

Rivera Marchand, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

Comparece ante nosotros El Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General (Ministerio Público), y solicita la revisión de la *Sentencia*[1] de archivo y sobreseimiento, emitida por el Tribunal de Primera Instancia, Sala de Aibonito (TPI o foro primario), el 9 de mayo de 2023 y notificada el 23 de mayo de 2023. Mediante su dictamen, el foro primario ordenó el archivo y sobreseimiento de una de las acusaciones presentadas en contra de Gilberto Ortiz Colón (Ortiz Colón o recurrido), en virtud de la Regla 247(b) de Procedimiento Criminal, 34 LPRA Ap. II, R. 247(b).

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari*, se revoca la *Sentencia* de archivo y sobreseimiento recurrida y se devuelve el caso al foro primario para la continuación de los procesos.

## I.

El 6 de septiembre de 2022, el Ministerio Público presentó cuatro (4) denuncias en contra de Ortiz Colón, a saber: dos infracciones al Artículo 3.2 (d), sobre maltrato agravado de la Ley 54

---

[1] Apéndice, págs. 23-25.

Número Identificador:

SEN2023_____

de 15 de agosto de 1989, según enmendada (Ley 54), *Ley para la Prevención e Intervención con la Violencia Doméstica* y dos infracciones al Artículo 59, de la Ley 246 de 16 de diciembre de 2011, según enmendada, *Ley para la Seguridad, Bienestar y Protección de Menores.*

Celebrada la vista de causa al amparo de la Regla 6 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 6, el foro primario encontró causa probable para arresto y le impuso una fianza de sesenta mil dolares ($60,000.00). Posteriormente, el 8 de diciembre de 2022, celebró la vista preliminar[2] en la cual encontró causa para uno de los cargos del Artículo 3.2(d) de la Ley 54 y uno de los cargos bajo el Artículo 59 de la Ley 246. Como resultado de lo anterior, el Ministerio Público presentó dos acusaciones en contra de Ortiz Colón por los delitos por los cuales el TPI encontró causa para acusar.[3]

Surge del expediente que, la acusación por violación al Artículo 3.2(d) de la Ley 54, *supra,* lee como sigue:

> El referido imputado, Gilberto Ortiz Colón, allá en y para el día 5 de septiembre del 2022[,] y en Barranquitas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aibonito, ilegal, voluntaria, criminalmente, a sabiendas, a propósito y con conocimiento, empleó fuerza y violencia física en contra de Nallelys A. Díaz Figueroa, persona con quien convivió y procreó dos hijas, consistente dichas acciones en que le dio con una escoba por el lado derecho del costado, sintiéndose la perjudicada ofendida, por la conducta impropia del imputado. El agravante consiste en que los hechos ocurrieron en presencia de tres menores de edad. [...][4]

De otra parte, la acusación por infringir el Artículo 59 de la Ley 246, *supra,* expone:

> El referido imputado, Gilberto Ortiz Colón, allá en y para el día 5 de septiembre de 2022[,] y en Barranquitas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aibonito, ilegal, voluntaria, criminalmente, a sabiendas, a propósito y con conocimiento, siendo el padrastro del

---

[2] Apéndice, págs. 11-14.
[3] Apéndice, págs. 15-18.
[4] Apéndice, pág. 15.

menor: D.E.N.D. (de 11 años de edad), incurrió en un acto que puso en riesgo de daño a su salud mental y emocional, consistente dichas acciones en que cometió el delito de[l] Art. 3.2(d) de la Ley 54, en contra de Nalle[l]ys Díaz Figueroa, madre del menor, en presencia de éste. [...][5]

Presentadas las acusaciones, Ortiz Colón instó una *Moción Solicitando Vista al Amparo de Pueblo de Puerto Rico v. Castellón Ca[l]derón, 15[1] DPR (2000).*[6] En su comparecencia, alegó que, conforme a lo dispuesto por nuestro ordenamiento jurídico y al Tribunal Supremo, el TPI debía evaluar los requisitos para ejercer su discreción de archivar una denuncia o acusación. Asimismo, solicitó que se señalara una vista a tenor con *Pueblo v. Castellón Calderón,* 151 DPR 15 (2000).

Celebrada la vista correspondiente, el 9 de mayo de 2023, testificaron las siguientes personas: Ortiz Colón, la Sra. Díaz Figueroa y el psicólogo, José Figueroa Morales (Sr. Figueroa Morales). Tras evaluar la prueba, el TPI determinó que no procedía el archivo de la acusación por el Artículo 59 de la Ley 246. Sin embargo, archivó la acusación bajo el Artículo 3.2(d) de la Ley 54. Cónsono con lo anterior, el 9 de mayo de 2023, el foro primario emitió la *Sentencia* impugnada en la cual ordenó el archivo del caso de epígrafe de conformidad con la Regla 247(b) de las Reglas de Procedimiento Criminal, *supra.* Como fundamento para el archivo, puntualizó lo siguiente:

> "Evaluada la prueba presentada, a tenor con lo dispuesto en el caso del Pueblo v. Castellón Calderón, 151 DPR 15 (2000)."[7]

En desacuerdo con la determinación del TPI, el 6 de junio de 2023, el Ministerio Público presentó una *Moción de Reconsideración.*[8] En síntesis, alegó que, ante la insuficiencia de la prueba presentada por Ortiz Colón sobre un plan auténtico de

---

[5] Apéndice, pág. 17.
[6] Apéndice, págs. 19-21.
[7] Apéndice, pág. 25.
[8] Apéndice, págs. 26-37.

convivencia familiar y al no sopesar los factores establecidos por la jurisprudencia, no procedía ordenar el archivo y sobreseimiento del Artículo 3.2(d) de la Ley 54. Para sustentar su posición, el Ministerio Público citó a *Pueblo v. Castellón Calderón*, supra, dando énfasis a que el Tribunal Supremo determinó que, aun cuando el tribunal puede considerar la falta de interés de la víctima para archivar una causa, esa falta de interés debe responder a un plan auténtico para establecer una buena convivencia familiar, como, por ejemplo, que la víctima y el acusado demuestren que están recibiendo ayuda profesional conducente a modificar la conducta del agresor.

En respuesta, el 14 de junio de 2023, Ortiz Colón presentó una *Réplica a la Moción de Reconsideración* en la cual expuso que, un auténtico plan de convivencia familiar no es un elemento que el tribunal debe tomar en consideración al momento de archivar un caso, a tenor con *Pueblo v. Castellón Calderón*, supra. Hizo énfasis en que la jurisprudencia lo que dispone es que el tribunal podrá considerar si la falta de interés responde a un plan auténtico para establecer una buena convivencia familiar, por lo que es discrecional del TPI tomarlo en cuenta.

Basado en lo anterior y celebrada la vista en la cual las partes argumentaron sobre los méritos de la reconsideración, el 20 de julio de 2023, notificada el 7 de agosto de 2023, el TPI emitió una *Minuta Resolución* en la cual determinó sostener su decisión y denegar la solicitud de reconsideración del Ministerio Público.

Inconforme con el dictamen del TPI, el 6 de septiembre de 2023, el Ministerio Público acude ante este foro revisor y le imputa al foro *a quo* haber cometido los siguientes errores:

> El Tribunal de Primera Instancia erró al ordenar el archivo y sobreseimiento de la acusación que imputa delito grave, en virtud de la Regla 247(b) de Procedimiento Criminal, utilizando como factor determinante la falta de interés de la víctima, a pesar de que no existe, ni siquiera, un plan autentico de reunificación familiar.

El Tribunal de Primera Instancia erró al no emitir una orden en la que expresara y/o fundamentara las causas del sobreseimiento, según requiere la Regla 247(b) de Procedimiento Criminal.

En reacción, Ortiz Colón se opone a la expedición del auto de *certiorari*. Separadamente, presenta una *Moción de Desestimación al Amparo de la Regla 34 del Reglamento del Tribunal de Apelaciones* a la cual se opone el Ministerio Público mediante *Oposición a Solicitud de Desestimación*. Evaluada la referida solicitud, determinamos denegar el petitorio desestimatorio.

Superado lo anterior, el 13 de octubre de 2023, mediante *Resolución*, concedimos al Hon. Luis S. Barreto Altieri, Juez Superior del Tribunal de Primera Instancia, el término de diez (10) días, al amparo de la Regla 83.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA XII-B, R.83.1, para fundamentar los dictámenes emitidos el 9 de mayo de 2023 y 20 de julio de 2023, respectivamente, conforme exige la Regla 247(b) de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 247(b). De conformidad con lo anterior, el 26 de octubre de 2023, el TPI emitió una *Resolución en Cumplimiento de Orden* en la cual fundamentó su determinación para archivar una de las acusaciones en el caso de epígrafe. Puntualizamos que, en su *Resolución*, presentó un resumen de los testimonios de los testigos que declararon en la vista del 9 de mayo de 2023 y para sustentar su determinación, expuso lo siguiente:

> "En conclusión, de la prueba presentada en la vista, la testigo principal del Pueblo (perjudicada) expresó no tener interés en el caso, que era la primera vez que hubo agresión entre ellos, que el acusado es un buen padre, que, al ver el cambio en el acusado, luego de las terapias, es su interés en reanudar su relación familiar. En la vista no se pasó prueba de que el acusado ha sido convicto en un caso relacionado o similar. El perito presentado por la defensa testificó que el acusado ha cambiado su comportamiento, que ambas partes dialogan mejor las situaciones y que ambos quieren reanudar su relación familiar."

En respuesta, el 6 de noviembre de 2023, Ortiz Colón presenta una *Moción de Determinaciones de Hechos Adicionales*. Mediante su comparecencia arguye que, de la grabación de la vista surge que, el psicólogo declaró que el cambio de Ortiz Colón y de la Sra. Díaz Figueroa se ha notado en la manera en que se dirigen uno al otro, cómo se tratan y en cómo han resuelto situaciones cuando los comparan con parejas anteriores.

Por su parte, el Ministerio Público presenta un *Escrito en Cumplimiento de Resolución*. En apretada síntesis, reitera su posición en cuanto a que el foro primario no tomó en consideración los factores establecidos en *Pueblo v. Castellón Calderón*, supra, al evaluar una solicitud de archivo y sobreseimiento. Enfatiza que, en el dictamen emitido el 26 de octubre de 2023, el TPI se limitó a exponer un resumen de la prueba oral desfilada durante la vista celebrada el 9 de mayo de 2023, confirmando así que no evaluó los factores necesarios para fundamentar su determinación. En reacción, el 13 de noviembre de 2023, Ortiz Colón insta una *Moción en Oposición a Escrito del Procurador General*.

Con el beneficio de la posición de las partes y la regrabación de la vista, procedemos a resolver.

**II.**

**A.** *Certiorari*

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, resuelto el 8 de mayo de 2023; *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, resuelto el 12 de abril de 2023. Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari*. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico,*

*Inc. y otros,* supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez,* supra.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari.* La citada Regla dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en que se demuestre que el dictamen emitido por el foro de instancia es arbitrario o constituye un exceso de discreción. *Pueblo v. Rivera Montalvo,* 205 DPR 352 (2020).

**B. Archivo y Sobreseimiento**

En *Pueblo v. Castellón Calderón,* supra, nuestro Tribunal Supremo estableció que, en casos sobre violencia doméstica, no es conveniente a los fines de la justicia que un tribunal archive automáticamente la denuncia o acusación, con oposición del

Ministerio Público, cuando la víctima exprese no tener interés en el caso. *Íd.*, pág. 28. Ante ello, el Tribunal Supremo concluyó que, el archivo de una denuncia, tomando en cuenta exclusivamente que la víctima no tiene interés en proseguir con el caso, constituye un abuso de discreción. *Íd.* Recordemos que, la discreción de un tribunal de archivar una denuncia o acusación *motu proprio* es amplia, pero nunca absoluta o ilimitada. *Íd.* pág. 22. La discreción no implica la abstracción del resto del Derecho, sino una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964).

A los fines de que el tribunal pueda ejercer su discreción de archivar una denuncia o acusación, deben concurrir ciertos requisitos, a saber:

(1) La evidencia con la que cuenta el Ministerio Público para establecer su caso;
(2) Naturaleza del delito;
(3) Si el acusado está encarcelado o ha sido convicto en un caso relacionado o similar;
(4) Tiempo que el acusado lleva encarcelado;
(5) Posibilidad de amenaza y hostigamiento;
(6) Probabilidad de que en el juicio pueda traerse evidencia nueva o adicional; y
(7) Si sirve a los mejores intereses de la sociedad proseguir con los procedimientos.[9]

Además, el tribunal deberá examinar la naturaleza de la acusación, incluyendo el tipo de actividad delictiva en cuestión, su seriedad, la frecuencia con que se archivan casos del mismo tipo, el impacto del sobreseimiento sobre la administración de la justicia y los derechos del acusado.[10] Aunque los factores anteriores constituyen elementos necesarios a considerar, esto no significa que todos deben concurrir para la justificación de un archivo.[11] Incluso, el tribunal puede considerar otros factores para determinar la procedencia del sobreseimiento en aras de crear un balance entre la

---

[9] *Pueblo v. Castellón Calderón*, supra, pág. 22.
[10] *Íd.*, pág. 23.
[11] *Íd.*

libertad del individuo y el interés del Estado de encausar a los responsables de actos delictivos.[12]

En cuanto al requisito de la celebración de una vista, el Tribunal Supremo ha hecho énfasis en que, tanto la defensa como el Ministerio Público, deben tener derecho a expresarse sobre la decretación de un sobreseimiento. Aún más, el Tribunal Supremo señaló que la participación del fiscal en esta vista es fundamental.[13] Por ello, cuando la víctima del delito ha manifestado su falta de interés en el caso y el Ministerio Público se opone a su archivo, el tribunal no puede decretar automáticamente el archivo o sobreseimiento del caso, con las consecuencias que ello acarrea. El tribunal debe celebrar una vista y considerar los factores establecidos por la jurisprudencia, pudiendo considerar la falta de interés en el caso al analizar si el Ministerio Público cuenta con evidencia para establecer su caso.

Cónsono con lo anterior, la Regla 247 de Procedimiento Criminal, 34 LPRA Ap. II, R. 247, establece las instancias en las cuales se puede sobreseer o archivar una denuncia o acusación, incluso *motu proprio*. A esos efectos, el inciso (b) de la citada regla dispone lo siguiente:

> Cuando ello sea conveniente para los fines de la justicia y previa celebración de vista en la cual participará el fiscal, el tribunal podrá decretar el sobreseimiento de una acusación o denuncia. Las causas de sobreseimiento deberán exponerse en la orden que al efecto se dictare, la cual se unirá al expediente del proceso.

### C. Apreciación de la prueba

Es norma reiterada que, los foros de instancia están en mejor posición para aquilatar los testimonios vertidos ante sí debido a que tienen la oportunidad de escucharlos y de ver y apreciar su comportamiento al declarar. *Pueblo v. Hernández Doble,* 210 DPR

---

[12] *Íd.*
[13] *Íd.*

850, 864 (2022). Sobre este asunto, el Tribunal Supremo de Puerto Rico abundó que "[n]o se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o **error manifiesto**." *Íd.* (Énfasis en el original.)

Cabe apuntalar que, constituye error manifiesto cuando la apreciación de la prueba que realiza el juzgador de los hechos se distancia de la realidad fáctica o resulta inherentemente imposible o increíble. *Íd.* Cónsono con lo anterior, se considerarán erróneas las conclusiones del foro de instancia cuando, de un análisis de la totalidad de la prueba recibida queda demostrado que, tales conclusiones están en conflicto con el balance más racional, justiciero y jurídico. *Íd.* Entiéndase que, si a la luz de la prueba admitida no existe una base suficiente que sustente la determinación del Tribunal de Primera Instancia, los foros revisores están facultados para sustituir el criterio del juzgador de los hechos por el suyo. *Íd.*

Como se sabe, es doctrina reiterada por el Tribunal Supremo de Puerto Rico que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesto; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Arlequín Vélez*, 204 DPR 117, 147 (2020). A esos efectos, la parte que impugne la apreciación de la prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres,* 117 DPR 645 (1986).

### III.

En la presente causa, el Ministerio Público sostiene que el TPI abusó de su discreción al ordenar el archivo y sobreseimiento de

una de las acusaciones en contra de Ortiz Colón y que, aun subsanando la omisión de fundamentar su determinación por escrito, no evaluó los factores establecidos en *Pueblo v. Castellón Calderón*, supra, al sólo tomar en consideración la falta de interés de la víctima y la posible existencia de una reconciliación entre el recurrido y la víctima. En lo pertinente, apunta a que, el foro primario no consideró la naturaleza del delito y la acusación, las cuales tratan sobre maltrato agravado, bajo el Artículo 3.2(d) de la Ley 54, *supra*, y alega que tampoco consideró la posibilidad de amenaza u hostigamiento o la probabilidad de que durante el juicio pueda traerse evidencia nueva o adicional.

El Ministerio Público arguye, además, que no existe un plan auténtico para establecer una buena convivencia familiar. Sobre lo anterior enfatiza que, Ortiz Colón no aceptó los hechos que dieron lugar a las acusaciones interpuestas por el Ministerio Público, sino que los minimizó y ofreció distintas versiones de lo sucedido.

Por su parte, en su escrito en oposición, el recurrido alega que, de la regrabación de la vista surge que, tanto Ortiz Colón como la Sra. Díaz Figueroa declararon que les gustaría retomar su relación y continuar buscando ayuda. Además, arguye que, el TPI tuvo la oportunidad de evaluar a los testigos y la evidencia presentada para, dentro de su discreción, determinar que Ortiz Colón y la Sra. Díaz Figueroa habían mejorado su relación de pareja, luego de acudir a una decena de terapias y que el acusado merecía la oportunidad que el tribunal le ofreció. Finalmente, el recurrido alega que, la prueba presentada concuerda con la realidad fáctica, por lo que no medió perjuicio ni parcialidad por parte del foro primario.

Un examen del expediente de autos, particularmente del contenido de la grabación de los procedimientos aquí en disputa, mueve nuestro criterio a concluir que la determinación emitida por el foro primario dista de lo que debería ser una adjudicación

razonable, justa y cónsona con la postura asumida en nuestro ordenamiento jurídico sobre el archivo y sobreseimiento de una causa.

El testimonio de la Sra. Díaz Figueroa estableció de manera patente que, el día en cuestión, fue víctima de un golpe no deseado por parte de Ortiz Colón. Su declaración fue una detallada en cuanto a cómo se produjo el incidente en disputa, así como, sobre los efectos que el mismo le ocasionó a su persona.[14] En lo pertinente declaró que, el día de los hechos, se encontraba sentada en un sillón lactando a su hija de cinco meses de edad[15] y que se suscitó una discusión por la limpieza de su hogar, lo que causó que Ortiz Colón le lanzara con una escoba y le diera en el costado derecho.[16] Añadió que, acto seguido, Ortiz Colón la llamó "puta" y "cabrona".[17] Admitió que el incidente asustó a sus otros dos hijos de 1 y 11 años, respectivamente.[18]

Relató que, tras el incidente, Ortiz Colón se marchó y ella llamó al Cuartel de la Policía para obtener una orden de protección.[19] Narró que su solicitud respondió a que sintió temor.[20] Indicó que previamente habían tenido discusiones en las cuales Ortiz Colón la había insultado, sin precisar la palabra específica.[21] Admitió que Ortiz Colón le prometió en muchas ocasiones que no volverían a ocurrir incidentes como el del día de los hechos, que aceptó haberla agredido con un palo y que le pidió perdón por lo ocurrido.[22]

Testificó que, a raíz del incidente, recurrieron a terapias de pareja para obtener técnicas de control de impulso y control de

---

[14] Véase, Regrabación de la Vista, Anejo V, 46:14-47:00.
[15] Véase, Regrabación de la Vista, Anejo V, 47:18-47:32.
[16] Véase, Regrabación de la Vista, Anejo V, 47:30-48:20.
[17] Véase, Regrabación de la Vista, Anejo V, 48:45-48:49.
[18] Véase, Regrabación de la Vista, Anejo V, 49:02-49:16.
[19] Véase, Regrabación de la Vista, Anejo V, 49:24-49:36.
[20] Véase, Regrabación de la Vista, Anejo V, 45:16-45:24.
[21] Véase, Regrabación de la Vista, Anejo V, 49:50-50:20.
[22] Véase, Regrabación de la Vista, Anejo V, 53.30:54:00.

coraje.[23] Aseveró que Ortiz Colón consume bebidas alcohólicas.[24] Detalló que, durante las terapias, identificaron que sus estresores fueron tener los hijos todo el tiempo y ser madre lactante,[25] sin recordar cuáles fueron los estresores de Ortiz Colón.[26]

Precisó que su relación con Ortiz Colón comenzó hace cuatro años.[27] Declaró que no trabaja y que recibe ayuda económica.[28] Atestó que, aunque no depende económicamente de Ortiz Colón, él le pasa pensión alimentaria.[29] Relató que actualmente vive con su madre.[30] Expresó que no se merecía que Ortiz Colón la golpeara con la escoba.[31]

Por su parte, del testimonio de Ortiz Colón y en apretada síntesis indicó que, tiene una relación con la Sra. Díaz Figueroa, pero actualmente "no están juntos".[32] Explicó que, recibió servicios psicológicos de Figueroa Morales desde el 12 de enero de 2023.[33] Sobre los hechos sucedidos el 5 de septiembre de 2022 reseñó que, al regresar de trabajar ese día, encontró la casa desordenada, con pañales tirados, jugo en el piso, comida y ropa en una esquina tirada, por lo cual, comenzó a limpiar la casa.[34] Narró que, le reclamó a la Sra. Díaz Figueroa por qué ella no había recogido la casa durante todo el fin de semana mientras él trabajaba.[35] Abundó que le propuso a la Sra. Díaz Figueroa que ella limpiara y recogiera la casa mientras él cuidaba a las nenas.[36]

Relató que, producto de lo anterior, la Sra. Díaz Figueroa discutió con él y no siguió su instrucción.[37] Detalló que en la

---

[23] Véase, Regrabación de la Vista, Anejo V, 50:27-50:46.
[24] Véase, Regrabación de la Vista, Anejo V, 50:55-51:06.
[25] Véase, Regrabación de la Vista, Anejo V, 51:14-51:29.
[26] Véase, Regrabación de la Vista, Anejo V, 51:30-51:40.
[27] Véase, Regrabación de la Vista, Anejo V, 51:44-51:48.
[28] Véase, Regrabación de la Vista, Anejo V, 52:33-52:39.
[29] Véase, Regrabación de la Vista, Anejo V, 52:47-52:57.
[30] Véase, Regrabación de la Vista, Anejo V, 52:39-52:42.
[31] Véase, Regrabación de la Vista, Anejo V, 55:36-55:41.
[32] Véase, Regrabación de la Vista, Anejo V, 4:53-5:14.
[33] Véase, Regrabación de la Vista, Anejo V, 5:50-6:12.
[34] Véase, Regrabación de la Vista, Anejo V, 8:10-9:01, 9:10-9:24, 10:41-10:43.
[35] Véase, Regrabación de la Vista, Anejo V, 9:02-9:08.
[36] Véase, Regrabación de la Vista, Anejo V, 11:08-11:16
[37] Véase, Regrabación de la Vista, Anejo V, 11:17-11:26

discusión la Sra. Díaz Figueroa le reclamó que no la ayudaba, lo comparó con su expareja, le indicó que no servía para nada y lo insultó.[38] Aclaró que, tres días antes del incidente, le había comentado a la Sra. Díaz Figueroa sobre el reguero que había en la casa y pensó que al regresar a la casa el día de los hechos estuviese ya todo en orden, lo cual no ocurrió.[39]

Narró que, las terapias los ayudaron a ambos a mejorar en la confianza, la comunicación y el trato mutuo.[40] Contrario a lo expresado por la Sra. Díaz Figueroa, Ortiz Colón negó que ingiere bebidas alcohólicas.[41] Alegó que la Sra. Díaz Figueroa le indicó que el palo de escoba que él tiró le rozó a ella en el área de las piernas.[42] A pesar de que su versión de los hechos es que tiró el palo de escoba al piso y mientras caminaba lo empujó y le dijo a la Sra. Díaz Figueroa "barre tú",[43] a preguntas de su representación legal, expresó arrepentimiento por todo lo acontecido.[44]

De otra parte, surge del testimonio que vertió el psicólogo Sr. Figueroa Morales durante la vista sobre *Pueblo v. Castellón Calderón* que, lejos de ser una apoyada en aseveraciones suficientes para derrotar lo alegado por el Ministerio Público, su declaración fue llana e inmaterial en cuanto a los hechos en disputa. Este atestó que, brinda servicios a personas de todas las edades.[45] Aclaró que no es psicólogo clínico porque no es doctor en psicología y que no tiene especialización formal.[46] Admitió que es la primera vez que declara en un tribunal como testigo y que no es su "fuerte" trabajar casos como el de epígrafe.[47]

---

[38] Véase, Regrabación de la Vista, Anejo V, 11:38-12:05.
[39] Véase, Regrabación de la Vista, Anejo V, 13:59-14:07.
[40] Véase, Regrabación de la Vista, Anejo V, 25:36-25:51.
[41] Véase, Regrabación de la Vista, Anejo V, 33:30-33:35.
[42] Véase, Regrabación de la Vista, Anejo V, 32:12-32:18
[43] Véase, Regrabación de la Vista, Anejo V, 30:29-31:39.
[44] Véase, Regrabación de la Vista, Anejo V, 18:08-18:13.
[45] Véase, Regrabación de la Vista, Anejo V, 1:04:50-1:05:20.
[46] Véase, Regrabación de la Vista, Anejo V, 1:00:57-1:05:51.
[47] Véase, Regrabación de la Vista, Anejo V, 1:05:35.

Sobre el incidente que hoy nos ocupa declaró que, inicialmente entrevistó a Ortiz Colón y a la Sra. Díaz Figueroa de forma individual con el objetivo de identificar el problema.[48] Producto de ello, comprobó que entre Ortiz Colón y la Sra. Díaz Figueroa existe un conflicto de violencia doméstica.[49] En síntesis concluyó que, de la información recibida por estos, reconoció que Ortiz Colón perdió el control y le "lanzó" con la escoba en el costado a la Sra. Díaz Figueroa.[50] Asimismo explicó que, Ortiz Colón y la Sra. Díaz Figueroa recibieron nueve terapias conjuntamente y una individual[51] y que, entre los temas allí discutidos estuvieron la confianza, fidelidad, actitud de honestidad, ser más asertivo, estresores e impulsividad.[52]

Respecto a su informe sobre el incidente de violencia doméstica entre las partes, declaró que, las metas del programa eran mejorar la comunicación y la confianza entre la pareja, ser más asertivos y escucharse mutuamente.[53] Testificó haber preparado de 15 a 20 informes como el presentado en este caso.[54] Aceptó haber utilizado como modelo para redactar su informe un formato existente, variando los temas específicos caso a caso.[55] Surge del referido informe que el Sr. Figueroa Morales brindó terapias sobre bebidas alcohólicas,[56] sin embargo, al ser contrainterrogado sobre este asunto, reconoció que ese tema no fue trabajado con la pareja.[57]

De otra parte, a preguntas del Ministerio Público, el Sr. Figueroa Morales no pudo contestar o explicar qué fortalezas observó en la relación, ante lo cual, titubeó y mantuvo silencio por

---

[48] Véase, Regrabación de la Vista, Anejo V, 1:07:10-1:07:27.
[49] Véase, Regrabación de la Vista, Anejo V, 1:07:30-1:08:07.
[50] Véase, Regrabación de la Vista, Anejo V, 1:07:10-1:07:40.
[51] Véase, Regrabación de la Vista, Anejo V, 1:12:03-1:12:13.
[52] Véase, Regrabación de la Vista, Anejo V, 1:09:50-1:13:50.
[53] Véase, Regrabación de la Vista, Anejo V, 1:19:22-1:22:00; 1:32:12-1:33:27.
[54] Véase, Regrabación de la Vista, Anejo V, 1:46:42-1:47:06
[55] Véase, Regrabación de la Vista, Anejo V, 1:48:00-1:48:30.
[56] Apéndice, pág. 50.
[57] Véase, Regrabación de la Vista, Anejo V, 1:34:10-1:36:42.

espacio de 40 segundos.[58] Sobre las debilidades identificadas en la relación atestó que, las inseguridades y los patrones de crianza de Ortiz Colón.[59] En cuanto a cómo aplicó las destrezas psicológicas que utilizó con la pareja, el psicólogo mantuvo silencio nuevamente sin poder contestar la pregunta del Ministerio Público.[60]

El Sr. Figueroa Morales no precisó cuántos casos de violencia entre parejas ha trabajado.[61] Admitió desconocer si Ortiz Colón tenía casos previos de agresión.[62] Asimismo, atestó que no podía garantizar, a su juicio, que Ortiz Colón no volviera a agredir a la Sra. Díaz Figueroa en un futuro.[63] Declaró que Ortiz Colón y la Sra. Díaz Figueroa le informaron su intención de terminar con el caso y retomar su relación.[64]

Por los fundamentos antes reseñados, resulta claramente que, el Ministerio Público logró impugnar tanto el testimonio como el informe del psicólogo, Sr. Figueroa Morales[65] y, por ende, la existencia de un plan auténtico de buena convivencia familiar. Luego de un estudio sosegado del expediente ante nuestra consideración, escuchados los testimonios vertidos por la Sra. Díaz Figueroa, Ortiz Colón y el psicólogo, Sr. Figueroa Morales, en conjunto con su informe pericial pudimos constatar que, no quedó demostrado -de manera fehaciente- que al presente existe un plan auténtico para establecer una buena convivencia familiar.

A nuestro entender, las diez terapias con el Sr. Figueroa Morales obedecieron únicamente a aparentar haber dado cumplimiento a lo resuelto en *Pueblo v. Castellón Calderón*, supra, para poner fin a la acusación en contra de Ortiz Colón por violencia

---

[58] Véase, Regrabación de la Vista, Anejo V, 1:36:58-1:37:40.
[59] Véase, Regrabación de la Vista, Anejo V, 1:38:51-1:39:22.
[60] Véase, Regrabación de la Vista, Anejo V, 1:40:19-1:42:00.
[61] Véase, Regrabación de la Vista, Anejo V, 1:23:57-1:24:26.
[62] Véase, Regrabación de la Vista, Anejo V, 1:30:18-1:30:30.
[63] Véase, Regrabación de la Vista, Anejo V, 1:43:22-1:43:45.
[64] Véase, Regrabación de la Vista, Anejo V, 1:17:54-1:18:00.
[65] Véase, Regla 608 de las Reglas de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 608.

doméstica. A lo antes se añade que, no se colige del expediente que las partes estén recibiendo la ayuda profesional adecuada, conducente a reunificar la familia y a modificar la conducta de Ortiz Colón para evitar la reincidencia.

En virtud de lo resuelto en *Pueblo v. Castellón Calderón*, supra, previo a ordenar el archivo de la acusación en contra de Ortiz Colón, ante la falta de interés de la Sra. Díaz Figueroa, el foro primario debió considerar que la naturaleza del delito imputado en la acusación archivada es violencia doméstica. Adicionalmente, el TPI debió ponderar que la pareja había tenido discusiones anteriores similares y que Ortiz Colón le había prometido, en múltiples ocasiones, que no repetiría tal conducta.[66] De igual manera, el foro primario incidió al determinar que existe un plan auténtico para establecer una buena convivencia familiar, a pesar de que la prueba documental y testimonial del psicólogo Sr. Figueroa Morales fue inequívocamente impugnada.

Ante las circunstancias antes señaladas, y en consideración a la insuficiencia de la prueba para sostener el dictamen recurrido, nos vemos obligados a concluir que, no es conveniente ni deseable a los mejores intereses de la justicia decretar, en esta etapa de los procedimientos, el archivo y sobreseimiento de la acusación bajo el Artículo 3.2(d) de la Ley 54, *supra*.

Sobre tales bases, expedimos el auto de *certiorari,* revocamos la *Sentencia* recurrida, reinstalamos la acusación por violación al Artículo 3.2(d) de la Ley 54, *supra,* y devolvemos este asunto al foro primario para la continuación de los procedimientos de conformidad con lo aquí resuelto.

---

[66] Véase, Regrabación de la Vista, Anejo V, 53.30:54:00.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de *certiorari,* se revoca la *Sentencia de Archivo y Sobreseimiento* recurrida y se devuelve el caso al foro primario para la continuación de los procesos, conforme a lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Rodríguez Flores, disiente, con la siguiente expresión: Contrario al dictamen mayoritario, el cual respeto, entiendo que el foro primario actuó conforme a lo resuelto en *Pueblo v. Castellón,* supra. Por lo anterior, unido a la deferencia a la apreciación evidenciaria del foro primario y al manejo práctico y cotidiano de este tipo de asuntos en primera instancia, hubiera confirmado.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones